The next case for argument is Amling v. Harrow Industries. We'll wait until the rustling has died down. Mr. Stephan, I think it's quieter now. I was very disappointed that the Bud Knight was not in the audience today. Your Honor, this next case has to do with the meaning of the word after. Your Honor, my intent is to reserve four minutes. I will do my best to do so. Your Honor, good morning and may it please the Court. John Stephan for Deborah Amling. This declaratory judgment action seeks interpretation of one clause of one contract, and in particular, the word after. The case can be heard in federal court because it presents a justiciable controversy under Article III. The case should have been and still should be heard in federal court because the concerns of the Wilton-Brilhard Doctrine are not and were not served by dismissal. The district court misapplied that doctrine and this court should reverse. Because I think it's the thornier issue and because I think it provides the limiting principles for this court to rule, I'm going to start with Wilton-Brilhard even though the briefing starts with justiciability. One of the fundamental concerns under Zavalas and the Fifth Circuit Sturwin-Williams test is fairness when it comes to Wilton-Brilhard. In this particular case, I think the most important two things are that the case is stayed in state court to allow resolution of these issues in federal court. Is it still stayed? Yes, Your Honor. Was that at your request? It was at my request. It drew one objection from Nexus, which is not a party to the declaratory judgment action, and drew no objection from Harrow. The procedural history of both the state action and of the underlying declaratory judgment act are important. One is that this is actually not the first declaratory judgment act to be taken up on this contract. It's the second. Mrs. Amling, actually both Amlings at the time, attempted to intervene in the first and for kind of wonky procedural reasons were told no. Within a matter of weeks, the Amlings filed a second declaratory judgment action. And so in terms of a matter of fundamental fairness, and that implicates issues like forum shopping, race for rest judicata, et cetera, there can be no contention here that fundamental fairness is threatened by having federal courts rule on the contract of the issue. But no court ruled on the first declaratory judgment action. It was ultimately dismissed with prejudice, right? It was voluntarily dismissed under Rule 41. So it was without prejudice after Harrow was given leave to do discovery on an alter ego issue, actually, that had to do with the other party to the contract that Harrow was trying to lay blame on. And that leads to kind of the next fundamental fairness issue, which is kind of sauce for the goose is sauce for the gander. Harrow was allowed to- One more factual question. Is Harrow a defendant in the state court proceedings? Yes, Your Honor. Then what's the point of it being a defendant in the federal court proceedings? If, as your client believes, Harrow is liable, it will be held liable in the state court proceedings. What would the federal proceedings add? Efficiency, Your Honor. The specter of- Usually we do not consider parallel state and federal proceedings against the same litigant a good example of efficiency. Quite apart from the declaratory judgment rules, a federal court is free to stay a federal suit against somebody who is already a defendant in state court. That's right, Your Honor. And in this particular case, that's why I think the procedural history is so important. And effectively, on October- let me look at the exact date. On October 11th of 2017, a declaratory judgment complaint was filed by Harrow in federal court. At that point, the underlying plaintiffs, the Amlings, had two options. One, we could have brought some sort of offensive summary judgment motion. We could have let it play out and risk the chance that Harrow would later just take a default judgment, in which case we would have to present evidence to the jury nonetheless. So plaintiffs, in this particular case, under these circumstances, effectively wanted to intervene in order to get the clarity that the declaratory judgment act provides early. Now, whether or not Harrow's declaratory judgment action could have been dismissed under Wilton-Brillhardt is not really the issue. There's a case that stands for the proposition that it would have been had plaintiffs sought to do that. And that case is Cunningham Brothers. The site on that one is- nope, I don't have it in front of me. But it's a 1969 case out of the Seventh Circuit. Your Honor, does that answer your question? I think that's a real sticking point here in this appeal in terms of the Wilton-Brillhardt issue. And I think that is one of the limiting principles that this court can look to when it looks at its district courts and says to them, we are not going to invite every asbestos defendant and every asbestos plaintiff to somehow rush the courthouse doors with affirmative defenses and asbestos litigation. I've been around federal courts long enough to know that that is not their goal, not their hope. So, of course, Harrow is headed both ways, kind of in federal court and in the state court below. They did not file a motion for summary judgment. They participated in some discovery in the state court. They filed a declaratory judgment action, and they were allowed to participate in discovery against nexus unimpeded and with the amlings sitting on the sidelines. That gets us back to Cunningham Brothers, and I think dovetails well with an older case called Chicago Metallic, and that's 1941. And that's 123F3518, where I think this circuit and other circuits have done it, too, have weighed in on really what parallel proceedings means. Parallel proceedings is not a catch-all phrase, especially in Wilt and Brilhart, that deals with the entire issue. So in Chicago Metallic, the court held that the mere pendency of another suit between the parties without more is no basis for refusing a declaration. That language is parroted in Zavalas, which is, of course, more recent. And Cunningham Brothers, I think, goes to another issue that's important in this particular case, and that is the plaintiffs have a choice where to litigate these issues. It's an important part of the considerations of fairness, quorum shopping, race or eschaticata, et cetera. And so the court in, excuse me, the Cunningham Brothers Court, and this is at 407F3rd at 1168, puts a great weight of the right of a personal injury plaintiff to choose the forum at the time, if all, to assert his claim, and goes on to say, he may not have wanted to litigate at the time which might be inconvenient to him or which might precede his determination of the full extent of damages in a forum chosen by the alleged tortfeasor. This case is clearly different. The Amlings were totally fine litigating in federal court, which is, of course, capable of resolving simple state court issues like the meaning of the word after. Some other courts have taken on this notion of when and where cases are parallel and what to do with it. The Third Circuit in a case called Kelly v. Maxim says this is the test. Comparing the state and federal action as they contemporaneously exist, not as they might eventually be. And I think the wisdom in that rule is that we avoid a lot of the hypothetical procedural muck that might happen if we were to go back to state court at this point. Or had we gone back to state court immediately. Of course, in October of 2017, had we pursued this issue at state court, parallel, there would have been issues between the same parties, the same exact issues on the same piece of paper, the asset purchase agreement. And that's 101 F. 3rd at 515. I'm sorry, that's not right. 868 F. 3rd at 274. So, Mr. Stephan, I guess you agree that on the Wilton real hard issue, our standard of review is abuse of discretion? Yes, Your Honor. And so, describe the scenario for me if you simply pursue this question of Harrow's liability in state court. If we were to affirm, what's the disaster and prejudice to you and your clients? Sure, Your Honor. I would say a couple things on that. One is that some of the prejudice has already happened, given the judge's abuse of discretion. Now, if you find that the district court did not abuse its discretion, of course, I guess that erases that. But I think the specter of a procedural morass is what would happen. What's the procedural morass? So, I'm going to use insurance as an example of what a defendant's duties are. And I know it's not a perfect analogy. But an insurer, in Illinois cases, can either defend under a reservation of rights or take a default judgment. And, of course, here we have an actual party to the case, so they are free to. Your insurance analogies are confusing to me because we're not talking about a duty to defend. And we've said repeatedly that issues of indemnity aren't really ripe until liability has been established. Right, Your Honor. So I think there are three procedural outcomes, all of which have much more uncertainty than would a declaratory judgment action just holding on the contract. One is a default judgment, where plaintiffs would still have a trial on damages, still call in a jury. Default against tariff. Yes. Okay. Two is they move for summary judgment, which, of course, we can't make them do. Well, there might be four here. Three, they also have the option of we could move for an offensive summary judgment motion. But I think our judge would look askance at that in some ways. One, because what we're effectively asking the court to do at that point is an indemnification. Which is what you're asking the federal judge to do, right? That's exactly what you're asking her to do. I don't think so, Your Honor. I think what we're asking the federal court to rule on is a much broader issue. And so I think what you're talking about is a standing issue rather than a Wilton-Brillhardt issue. I don't know that I mean that at all. Okay, I'm sorry. What's the difference between your federal declaratory judgment action and this offensive summary judgment motion in state court? The difference would be the uncertainty that would result from a state court judge who might tell us to just wait until the end of the case because we're in a situation where that's what Judge Myerscough said, right? Okay, so what's the other alternative? That's correct. So the other issue is HERO has been actively defending the case in state court. So we're in a strict box where HERO has gotten to participate in discovery along the way. It's unclear under Illinois law whether HERO at this point would be, for example, stopped from challenging a judgment against HERO. How would Judge Myerscough be able to address that issue? Judge Myerscough, if she rules on the contract, as the contract between HERO and Nexus, would establish, at least for the purposes of these parties, at least issue preclusion. Would that resolve your potential estoppel argument against HERO? That would resolve that estoppel issue against HERO. Based on activity in the state court proceeding? Because it would be an issue preclusion, I think, Your Honor. So it would be the same issue between the same parties litigating. You would litigate estoppel in the federal court based on the activity in the state court?  I would litigate the activity of taking a federal declaratory judgmental action on their own. I understand that your concerns are this kind of gatekeeping issue. You've described, you say there's a procedural morass. I'm not convinced yet in terms of just letting the state court decide this is part of the larger dispute. Sure, Your Honor. Maybe morass is too strong a word, and maybe uncertainty versus certainty is a better way to put it. So the uncertainty that would come with going back to state court, allowing HERO all sorts of procedural options that they should be forced to foreclose at this point once they sought declaratory relief in federal court. Those options, I guess it would be take a default judgment. They could file another federal declaratory judgment action in front of a court who apparently had no problem under Wilton-Brilhart or standing to let them do discovery. Since it was dismissed without prejudice, I think uncertainty is a better word than morass. So those are at least the hypothetical procedural positions I could foresee ourselves being in. How are you? I'll try an insurance hypothetical. How are you worse off than if you sued a defendant who's insured and is being defended under a reservation of rights? You don't know whether the policy is going to be there to deliver if you win a judgment. Right, Your Honor. So we're not, but I think what the Declaratory Judgment Act would provide is, well, and Article III would be for the inmates to have standing to get a declaratory judgment against that insurer on its duty to defend before the case even started. No, the hypothetical you were given was somebody who was in fact being defended. I see. But under a reservation of rights. So the insurer was saying, we're not planning to indemnify, but we are in fact defending. We don't know whether we're going to indemnify. That's your situation here, right? You don't know whether you've got a deep pocket in that direction. That's fair to say, Your Honor. I'm out of time. I just want to make sure I answer your questions before we go. We see it too. All right. Thank you, Counsel. Thank you, Your Honors. Mr. Drumke. Good morning, Your Honor. May it please the Court. I think the insurance discussion is appropriate. All the cases relied on by the Amlings to overturn or try to argue against the district court's opinion are insurance law cases. And in their reply brief, the Amlings refer to the Herald's responsibilities under the asset purchase agreement as being akin to a duty to defend, which ripens at the beginning of a case rather than, and they say like a duty to indemnify, upon final judgment. They make the following statement where there is an actual controversy such as over an insurance duty to defend, declaratory relief is proper. And again, because the very existence of a lawsuit imposes a need to defend today, a dispute over the duty to defend is by definition a lie of controversy today. Those are the cases that are cited in the reply brief that the Amlings are relying on for the proposition that jurisdiction lies with the district court in order to determine their rights under a contract that they're not actually a party to and which is not an insurance contract. All of their case law is insurance cases discussing the duty to defend. There is no such duty in the underlying asset purchase agreement, which is at issue in this case. It's just an agreement which memorializes which of the parties to the contract, which does not include the Amlings, have agreed to assume what liabilities. What the Amlings are looking for is a declaration that Harrell has a duty to indemnify that, or to satisfy a potential judgment should they get one in the state court. They're seeking a declaration in effect that Harrell has to indemnify them for the alleged tortuous conduct of National Greenhouse, a company that Harrell sold 25 years ago. What the district court held correctly was that a declaratory judgment seeking indemnification, as opposed to a duty to defend, is generally not right unless there has been a finding of liability in the underlying action, which is the Lear Corp case authored by Your Honor, Judge Easterbrook. It doesn't matter who writes the opinions of the court. They speak for the court. I understand, Your Honor. The district court also relies on nationwide insurance, which is another Seventh Circuit case, for the same proposition, namely that the duty to indemnify is not right for adjudication until the insurer is in fact liable in the underlying suit. There is some discussion about the Banker's Trust case, but the district court distinguished that and noted that it presented a rare circumstance when this court has deviated from the general rule that decisions about indemnity should be postponed until the underlying liability has been established and went on to discuss and cited the district court opinion in City of Chicago v. Arvin Meriter as interpreting that exception as applying when plaintiff's legally protected interest in a recovery is in jeopardy before the underlying claim is restored. That is not the case here. There are still other defendants in the underlying state court case. Asbestos liability cases are joint in several in Illinois. There is no guarantee that there will be a verdict against Harrell, and even if there were a verdict, there is no jeopardy as it stands right now to the plaintiff because whether the district court exercises jurisdiction or not, it's unclear that the parties will be in any different place at the end of the state court proceedings. This goes to the heart of the Supreme Court's analysis in Metamor v. Genentech, and there the court said that the question of whether a declaratory action satisfies the case or controversy requirement is whether the facts alleged under all circumstances show that there is a substantial controversy between the parties having adverse legal interest of sufficient immediacy, and I think that's important to warrant the issuance of a declaratory judgment. There has been no demonstrated immediacy here by the Amlings. The underlying case was stayed at their request. Have you asked to lift that stay, or did you agree to the stay? Your Honor, we did not oppose it. We didn't agree to it. We haven't asked that it be lifted. The reason we filed, and I think it's important for the court to understand, the reason that we went to federal court in the first instance was that Nexus Corp. had been sued in the underlying case. There are two Nexus corporations with a third corporation sandwiched in the middle. National Greenhouse was sold to Nexus Corporation. National Greenhouse was then sent to what was called Fiji Corp., and then Nexus Corp. reformed itself. So there is an old Nexus and a new Nexus. We were unable to discern what happened without some discovery. The problem was the plaintiffs had sued Nexus Corporation but were doing nothing in the underlying state court case to make them appear. They had been served, but Nexus Corp. did not appear in the underlying state court case until January of 2018. So we felt that we had no ability to conduct discovery in the underlying state court case because Nexus had not subjected itself to jurisdiction in the state court. I'm lost. Parties don't subject themselves to a state court jurisdiction. They are served with process. Right, but they had not yet appeared and not yet answered. You can serve discovery requests on a party. They were parties. You might even ask for a default judgment against them. I find bizarre the statement, we came to federal court to get discovery against somebody who was a party in state court but wasn't cooperating. We didn't. They weren't cooperating, Your Honor. There was no counterclaim pending against them. You didn't file a third-party complaint against them to bring them in? No, in Madison County and asbestos litigations, there's a standing order that counterclaims are deemed as amongst the co-defendants. I'd love to see that standing order. In asbestos cases, counterclaims are doomed. It's also the standing order in Cook County, Your Honor, that is to avoid the court being inundated with cross-pleading. As if they weren't inundated now. Correct. In any event, once we determined who the corporate transactional history with Nexus Corp was, we understood that the company that had taken the liabilities of or had bought National Greenhouse was defunct and that we dismissed. We purposely did not name the plaintiff because we didn't think they were a proper party to declaratory action between two parties to a separate contract. I think what the Amlings are asking the district court to do is to tell them who they can pursue in the underlying action. They're asking for the kind of advisory opinion that the Lear case said was anathema to our advisory. I don't know why it's advisory. They're free to ask the state court that, and apparently everybody agrees that they have asked the state court to hold Harrell liable. So the request in federal court to hold Harrell liable just seems duplicative. Yes, Your Honor, I agree. And we don't think that they have standing to ask the court to interpret that. How do they lack standing to ask the federal court something in which they're seeking money damages? The claim, we want money from X, the claim that's actually being made against Harrell in state court. They trot over and file in federal court. Well, it's still, we want money from Harrell. And they may, of course, fail to prove their tort claim. And then they won't get any money from Harrell. Correct. Or they may have failed to prove that Harrell was liable. And then they won't get any money from Harrell. But what does that have to do with standing? Every plaintiff may fail to prove the claim, but that doesn't mean there's no standing. We don't think they're standing because they're not a party. This is not an insurance contract, and they're not party to the contract. They're parties to the state litigation. The plaintiff wants money from Harrell, right? That's your paradigm of a case within Article III, if it's also within the statute, diversity more than 75,000. Well, and we have appeared in a state court case, and we're defending the state court case. Exactly. So this has nothing to do with standing. This has to do with prudence. Yes. We also don't think it's ripe, which may be the same thing in the court's mind. So for the reasons stated, I don't have to answer any questions. For the reasons stated, we believe that the district court's opinion should be affirmed. Thank you very much. Thank you. The case is taken under advisement.